UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. GRADFORD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DEPUTY BAEZ,<br><br>　　　　Defendant. | Case No.: 1:20-cv-00858-DAD-JLT (PC)<br><br>ORDER TO THE PLAINTIFF TO NOTIFY THE COURT HE WISHES TO PROCEED ONLY ON THE COGNIZABLE CLAIM OR TO FILE A FIRST AMENDED COMPLAINT |

William J. Gradford seeks to proceed *in forma pauperis*[1] with this civil rights action pursuant to 42 U.S.C. § 1983. (Docs. 1, 3.) Petitioner seeks redress due to an incident involving Deputy Baez and retaliation he claims he faces in prison. (See Doc. 1.) Plaintiff states a cognizable claim only as to excessive force in violation of the Eighth Amendment to the Constitution.

**I.　　Screening Requirement**

When an individual seeks to proceed *in forma pauperis*, the Court is required to review the complaint and shall dismiss a complaint, or portion of the complaint, if it is "frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).

A plaintiff's claim is frivolous "when the facts alleged rise to the level of the irrational or the

---

[1] The Court is deferring ruling on Plaintiff's request to proceed *in forma pauperis* until Plaintiff provides sufficient facts to determine whether the case is frivolous.

1

wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992). In other words, a complaint is frivolous where the litigant sets "not only the inarguable legal conclusion, but also the fanciful factual allegation." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

## II.     Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to inform the defendant of the grounds upon which the complaint stands. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (internal quotation marks and citations omitted). Vague and conclusory allegations do not support a cause of action. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 556 U.S. at 679 (citations omitted). When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal conclusions are not entitled to the same assumption of truth. Id. The Court may grant leave to amend a complaint to the extent deficiencies of the complaint can be cured by an amendment. Lopez v. Smith,

203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

## III. Section 1983 Claims

An individual may bring an action for the deprivation of civil rights pursuant to 42 U.S.C. § 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To state a cognizable claim under Section 1983, a plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976).

## IV. Factual Allegations

Plaintiff alleges that while incarcerated at Stanislaus County Public Safety Center, on January 16, 2019, during a clothing exchange, he asked a unit deputy if he could process his outgoing legal mail. (Doc. 1 at 4.) When the unit deputy left without processing his legal mail in front of him, Plaintiff asserts that he pressed his cell intercom button to which Deputy Baez, the shift supervisor, responded. (Doc. 1 at 5.) Plaintiff asserts that he notified Deputy Baez that the other deputy walked out without processing his legal mail in front of him and to ask him not to do that again; according to Plaintiff, Deputy Baez responded by saying "I'm not his keeper, you tell him yourself." (Doc. 1 at 5.)

Plaintiff claims that he went on with his day reading and writing, and approximately five minutes later, Deputy Baez was standing at his cell door with four other deputies and he directed to place the Plaintiff in handcuffs. (Doc. 1 at 5-6.) Plaintiff claims that he complied the entire time, while he was hurting physically. (Doc. 1 at 6.) According to Plaintiff, Deputy Baez[2] "rushed in grabbed [him] with both hands extremely hard by the back shoulder as if he was going to break bones," and "tightly handcuffed" him. (Doc. 1 at 6.) Plaintiff claims that although he did not resist, his face and body were smashed against the outside of his cell wall. (Doc. 1 at 6.) Plaintiff alleges that Deputy

---

[2] Plaintiff does not clearly identify Deputy Baez throughout his allegations, instead using the pronoun "he" in many instances; however, in context, it appears that Plaintiff is referring to Deputy Baez.

3

Baez put his hand on the back of his head and pressed it very hard, "smearing [his] face on the wall" repeatedly. (Doc. 1 at 6.) According to Plaintiff, Deputy Baez jerked him away from the wall, while yelling sarcastically "you think you know it all." (Doc. 1 at 6.) Plaintiff claims that he remained silent, was not resisting and stayed respectful and cooperative at all times. (Doc. 1 at 6-7.) Plaintiff alleges that he was jerked along as Deputy Baez was walking him outside of his housing unit towards the exit door, and Deputy Baez continued to say, "you think you know it all." (Doc. 1 at 7.) Plaintiff alleges that Deputy Baez again smashed his body and face against the wall and would "smear [his] face on the wall." (Doc. 1 at 7.) Plaintiff claims that he was led out the door to the interview room with the four other deputies following and watching. (Doc. 1 at 7.) Plaintiff alleges that while Deputy Baez was taking him to the interview room, he kept grabbing his wrists while he was "tightly hand cuffed from behind," and kept forcing his hands and arms upward towards the ceiling "almost like breaking [his] shoulder and arms, lifting from [his] wrists." (Doc. 1 at 9.)

According to Plaintiff, Deputy Baez chained him to a metal two-man bench in the interview room, sat closely across from him, staring at him "face to face, as [he] kept [his] head down in silence with [Deputy Baez's] co-deputies standing on the side inside the interview room." (Doc. 1 at 7.) Plaintiff claims that Deputy Baez started to intimidate him. (Doc. 1 at 8.) Plaintiff alleges that he asked to say something, and Plaintiff stated that he was going to report Deputy Baez and the other deputies about what was just done to him, and when Plaintiff asked the four deputies for their names, they all walked out of the room without giving him their names, leaving Plaintiff alone with Deputy Baez. (Doc. 1 at 8.) According to Plaintiff, he again told Deputy Baez that he was going to report him, and he was led back to his cell. (Doc. 1 at 8.)

According to Plaintiff, approximately twenty minutes later, an unknown deputy came to his cell and slid a paper under his door describing multiple charges raised by Deputy Baez. (Doc. 1 at 8.) Plaintiff reports that approximately three days later, he was called out of his cell to an interview room by Sergeant Earl who was doing the investigation regarding the charges Deputy Baez had lodged against him. (Doc. 1 at 8-9.) Plaintiff reports that after he told Sergeant Earl what happened, Sergeant Earl said he did his investigation and did not believe his deputies and the charges were dismissed. (Doc. 1 at 9.) Plaintiff asserts that he is well known in the jail by the deputies because of the "multiple

4

grievances of retaliation against deputies and federal civil suits." (Doc. 1 at 9.) Plaintiff claims that Deputy Baez was taking revenge for the multiple grievances against his co-workers for retaliation, and Plaintiff claims to have mentioned this when he was in the interview room with Deputy Baez. (Doc. 1 at 9.)

## V.      Discussion and Analysis

Petitioner seeks redress due to an incident involving Deputy Baez and retaliation he claims he faces in prison. This raises civil rights claims under 42 U.S.C. § 1983.

### A.      Excessive Force under the Eighth Amendment

The Eighth Amendment protects inmates from inhumane methods of punishment and conditions of confinement. See Farmer v. Brennan, 511 U.S. 825 (1994); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). One of the "basic human needs" that prison officials must provide is personal safety, and prison officials have a duty to take reasonable steps to protect inmates from physical harm. Hoptowit v. Ray, 682 F.2d 1237, 1247, 1250-51 (9th Cir. 1982). To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

"Whether a particular event or condition in fact constitutes 'cruel and unusual punishment' is gauged against 'the evolving standards of decency that mark the progress of a maturing society.'" Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). However, the Supreme Court has determined that "when prison officials maliciously and sadistically use force to cause harm contemporary standards of decency are always violated." Id. (citing Hudson, 503 U.S. at 9). In such circumstances, "the only requirement is that the officer's actions be 'offensive to human dignity,'" and a physical injury is not necessary to establish a claim. Id. (quoting Felix v. McCarthy, 939 F.2d 699, 702 (9th Cir. 1991)).

The Supreme Court determined that "[n]ot every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 9). Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." Whitley v. Albers, 475 U.S. 312, 321 (1986); Marquez v. Gutierrez, 322 F.3d 689, 692 (9th Cir. 2003). In addition, the

Court may consider "the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (internal quotation marks omitted). Although the extent of an injury is relevant, the inmate does not need to sustain serious injury. Id.; Wilkins, 130 S. Ct. at 1178-79. The prohibition on cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force. Hudson, 503 U.S. at 9-10.

Plaintiff alleges that when he was placed in handcuffs, he complied the entire time, despite being in pain. (Doc. 1 at 6.) Plaintiff further claims that although he did not resist, his face and body were smashed against the wall. (Id. at 6-7.) Plaintiff alleges that Deputy Baez put his hand on the back of his head and pressed it very hard, "smearing [his] face on the wall" repeatedly. (Id.) Plaintiff claims that he remained silent, was not resisting and stayed respectful and cooperative at all times. (Id.) From the facts alleged, there is no indication Deputy Baez perceived a threat when he smashed Plaintiff's body and face against the wall. Since there appears to have been no need for that use of force and the allegations suggest no threat posed by the plaintiff, these allegations are sufficient to proceed against Deputy Baez on an excessive force claim.

### B.     Mail Protections

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Nevertheless, correctional institutions and jails have a legitimate governmental interest in imposing certain restraints on inmate or detainee correspondence to maintain order and security. See Procunier v. Martinez, 416 U.S. 396, 413 (1974), overturned on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). For example, inmates and detainees may have their mail screened to ensure that there is no contraband inside. Mangiaracina v. Penzone, 849 F.3d 1191, 1195 (9th Cir. 2017). The mere fact that prison officials open and conduct a visual inspection of a prisoner's mail does not state a claim for violation of a prisoner's constitutional rights. Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Nordstrom v. Ryan, 762 F.3d 903, 908-909 (9th Cir. 2014) ("Nordstrom I"); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th Cir. 1996).

Prison officials may examine an inmate's mail without infringing his rights and inspect non-legal mail for contraband outside the inmate's presence. United States v. Wilson, 447 F.2d 1, 8 n. 4

(9th Cir. 1971); Witherow, 52 F.3d at 265-66 (upholding inspection of outgoing mail). In the Ninth Circuit, "mail from the courts, as contrasted with mail from a prisoner's lawyer, is not legal mail." Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996). "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Id. at 1094 (citing to Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987)).

Under federal law, "legal mail" entitled to First Amendment protection is narrowly defined as confidential correspondence between a prisoner and his attorney. See Nordstrom I, 762 F.3d at 909. The Ninth Circuit "recognize[s] that prisoners have a protected First Amendment interest in having properly marked legal mail [including civil mail] opened only in their presence." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017). However, an isolated instance or occasional opening of legal mail outside the inmate's presence does not rise to the level of a constitutional violation. See Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989).

In criminal cases, such correspondence is also protected by the Sixth Amendment. See Mangiaracina, 849 F.3d at 1196 (and cases cited therein). "[P]rison officials may open, but not read, incoming legal mail in the presence of the inmate." Nordstrom v. Ryan, 856 F.3d 1265, 1272 (9th Cir. 2017) ("Nordstrom II") (citing Wolff, 418 U.S. at 577). "[T]he practice of requiring an inmate to be present when his legal mail is opened is a measure designed to prevent officials from reading the mail in the first place." Nordstrom I, 762 F.3d at 910 (citing Wolff at 577); Mangiaracina, 849 F.3d at 1196 (Sixth Amendment requires a pretrial detainee be present when legal mail related to a criminal matter is inspected; even a single incident of improper reading of a pretrial detainee's mail may give rise to a constitutional violation).

Plaintiff alleges he made requests to the deputy regarding processing of his outgoing legal mail. (See Doc. 1 at 4-5.) Plaintiff asserts that he asked a unit deputy if he could process his outgoing legal mail, and when the unit deputy left without processing his legal mail in front of him, he notified Deputy Baez and asked that it not happen again. (Doc. 1 at 4-5.) Plaintiff's allegations fail to state a constitutional violation. Plaintiff has not alleged that the deputy improperly read his legal mail or prevented him from sending legal mail. Plaintiff's allegations that the deputy did not process his outgoing legal mail in Plaintiff's presence, without more, fails to state a constitutional violation. Thus,

Plaintiff fails to state a claim for interference with his mail under the First and Sixth Amendments.

### C. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). As discussed by the Ninth Circuit in Watison v. Carter:

> "A retaliation claim has five elements. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action. . . ." Brodheim, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir.1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting

Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff alleges that Deputy Baez's actions were done in retaliation for Plaintiff filing "multiple grievances" and federal civil suits. (See Doc. 1 at 9.) However, Plaintiff does not allege sufficient facts that, if true, would demonstrate that Deputy Baez acted in retaliation for Plaintiff exercising his constitutional rights. Plaintiff does not allege that Deputy Baez ever mentioned the lawsuits to Plaintiff or told him to drop the lawsuits or that anything was said that demonstrated that Baez even knew of the previous lawsuits/grievances. Rather, he *concludes* that this was Baez's motivation; this is not sufficient. Thus, Plaintiff has not alleged sufficient facts for the Court to find that specific adverse actions were taken against him, or to find a causal connection between those actions and Plaintiff's exercise of protected First Amendment rights. Further, Plaintiff's fear of retaliation and his speculation about the deputies' motives do not plausibly show that any such connection existed. Accordingly, Plaintiff fails to state a cognizable claim for retaliation. Plaintiff shall be granted leave to file an amended complaint curing the deficiencies found by the Court.

### D.     Mental Injury

Plaintiff states his injury was "physically, mental, and fear." (Doc. 1 at 4.) Plaintiff is advised that the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002)) (back and leg pain and canker sore *de minimis*); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*). Therefore, Plaintiff may not recover for emotional distress caused by the use of excessive force unless he also shows he suffered a physical injury.

### VI.    **Conclusion and Order**

Plaintiff has alleged sufficient facts to state a claim under the Eighth Amendment related to the

use of excessive force only.  Thus, he can proceed in one of several ways: 1.) he can notify the Court that he wishes to proceed only on the excessive force claim; 2.) he can file an amended complaint that addresses all of the deficiencies noted in this order; 3.) he can choose to stand on his complaint and the Court will recommend that the action proceed only on the excessive force claim and the rest of the action be dismissed without leave to amend; or 4.) he can choose to voluntarily dismiss the entire case.

If the plaintiff chooses to file an amended complaint, the Court will allow him only **one** additional opportunity.  See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987); see also Lopez, 203 F.3d at 1128 (dismissal of a *pro se* complaint without leave to amend for failure to state a claim is proper only where it is obvious that an opportunity to amend would be futile).  The amended complaint must reference the docket number assigned to this case and must be labeled "First Amended Complaint." Plaintiff is advised that an amended complaint supersedes the original complaint.  Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  In addition, the amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.  Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Finally, Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1986) (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)).  Based upon the foregoing, the Court **ORDERS**:

1. **Within 30 days**, Plaintiff **SHALL** take one of the following actions:

   a. Notify the Court that he wishes to proceed only on the excessive force claim; **OR**

   b. File an amended complaint that addresses the deficiencies noted in this order; **OR**

   c. Do nothing and the Court will recommend that the action proceed only on the excessive force claim and the rest of the action be dismissed without leave to amend; **OR**

///

///

///

///

///

     d.)    Voluntarily dismiss the entire case.

IT IS SO ORDERED.

   Dated:   **September 22, 2020**            **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE