UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. GRADFORD,<br><br>    Plaintiff,<br><br>v.<br><br>DEPUTY BAEZ,<br><br>    Defendant. | Case No. 1:20-cv-00858-ADA-BAK (BAM) (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING TO GRANT DEFENDANT'S MOTION FOR ORDER ENFORCING SETTLEMENT AND DISMISSING CASE AND TO DISMISS THIS ACTION WITH PREJUDICE<br><br>(ECF No. 32)<br><br>**FOURTEEN (14) DAY DEADLINE** |

  Plaintiff William J. Gradford ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. This action proceeds on Plaintiff's Eighth Amendment claim against Deputy Baez ("Defendant") for use of excessive force in an incident alleged to have occurred on January 16, 2019. (ECF No. 1.) On February 3, 2022, Defendant filed a motion for an order enforcing the parties' settlement agreement and dismissing the case. (ECF No. 32.) Plaintiff filed a response in opposition. (ECF No. 35.)

**I. DEFENDANT'S MOTION**

  **A. Settlement Agreement and Release of Claims**

  Defendant moves to enforce a settlement agreement entered into by the parties and to dismiss this case pursuant to a release and discharge signed by Plaintiff on May 7, 2019. (ECF

No. 32 at 8–9.) In support of his motion, Defendant submits a two-page document titled, "Release of All Claims," which states in part:

> The County of Stanislaus is paying to William Gradford the sum of $3,000.00 in exchange for which William Gradford agrees to release and discharge the County of Stanislaus, its employees, and/or representatives of and from any and all claims, demands, actions or causes of action, known or unknown, which William Gradford may have against the County of Stanislaus, its employees, and/or representatives and to dismiss all pending actions, with the parties to those actions to bear their own fees and costs.

(ECF No. 32 at 8.) The release further provides: "[T]he undersigned has carefully read and understands the contents of this release and signed the same as his/her own free act. THIS RELEASE SHOULD NOT BE SIGNED UNLESS READ AND UNDERSTOOD BY THE PERSONS SIGNING SAME." (*Id.* at 9.)

Defendant also submits the declaration of his attorney, Dan Farrar ("Mr. Farrar" or "defense counsel") (*Id.* at 5–6.) Mr. Farrar represented that in *Gradford v. Tiexiera*, 1:17-cv-00201-DAD-GSA, prior to the settlement conference scheduled for May 15, 2019, Plaintiff filed a request for all of his federal lawsuits be discussed at the at the settlement conference. The Court granted the request and identified six cases:

(1) *Gradford v. Tiexiera, et al.*, 1:17-cv-00201-DAD-GSA (PC)

(2) *Gradford v. McDougal*, 1:17-cv-00575-DAD-GSA (PC)

(3) *Gradford v. Stanislaus Public Safety Center, et al.*, 1:17-cv-1248 DAD-GSA (PC)[1]

(4) *Gradford v. Lignoski*, 1:17-cv-1460 DAD-GSA (PC)

(5) *Gradford v. Chan*, 1:18-cv-0710 DAD-GSA (PC)

(6) *Gradford v. Guiltron*, 18-cv-1364 DAD-GSA (PC)

*Tiexiera*, 1:17-cv-00201-DAD-GSA (PC) (ECF No. 86). After negotiations, the County of Stanislaus ("County") offered Plaintiff $3,000 in exchange for a dismissal of all pending actions and a release of all claims, known or unknown. (Farrar Decl., ECF No. 32 at 6.) At a meeting on May 7, 2019, defense counsel provided Plaintiff with a settlement check in the amount of $3,000,

---

[1] Given the dismissal of Defendants Stanislaus Public Safety Center and Lt. Kirt, this case will be referred to as *Gradford v. Florres*, or "*Florres.*"

2

and Plaintiff signed the release and stipulations for dismissal of cases in which defendants had appeared. (*Id.*) Mr. Farrar also provided Plaintiff with requests for dismissal for the cases in which defendants had not been served. (*Id.*)

The three cases in which the defendant had appeared were dismissed by stipulation filed by defense counsel: *Lignoski*, 1:17-cv-01460-DAD-GSA (PC); *Tiexiera*, 1:17-cv-00201-DAD-GSA (PC); and *McDougal*, 1:17-cv-00575-DAD-GSA (PC). Plaintiff voluntarily dismissed *Chan*, 1:18-cv-00710-DAD-GSA (PC). Plaintiff did not voluntarily dismiss the remaining two cases, *Guiltron*, 1:18-cv-01364-DAD-GSA (PC); and *Florres*, 1:17-cv-01248-DAD-GSA. The defendants in these cases filed motions to enforce the settlement and dismiss the cases. The Court in each case found that the settlement and release form constituted a valid, clear, and unambiguous waiver of Plaintiff's claims. Accordingly, the Court granted the motions to enforce the settlement and dismissed the cases. *Guiltron*, 1:18-cv-01364-DAD-GSA (PC) (ECF No. 38, 40); *Florres*, 1:17-cv-01248-DAD-GSA (PC) (ECF No. 57, 62).

On September 9, 2019, Plaintiff filed *Gradford v. Freddie*, 1:19-cv-01252-DAD-EPG (PC), alleging constitutional violations occurring in 2017. While this case involved procedural difficulties because of contradictory pleadings filed by the Plaintiff, the Court ultimately construed a motion to dismiss filed by Plaintiff as a request for voluntary dismissal. The Court determined that the signed release form constituted a valid, clear, and unambiguous waiver of Plaintiff's legal claims and dismissed the action. (*Id.* at ECF No. 68.)

Defendant argues that the settlement agreement meets the essential elements of an enforceable contract under California Civil Code section 1550: (1) the parties are capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. (ECF No. 32 at 4.) Plaintiff is an adult; appears to be of sound mind, as evidenced by initiating over a dozen cases in the Eastern District and filing numerous motions in many of them; and is presumed to be competent to contract under the Due Process in Competence Determinations Act, California Probate Code sections 801, *et seq.* (*Id.*) In addition, Defendant argues that Plaintiff's signature on the release and on the stipulations for dismissal filed in the three cases referenced above, are evidence of Plaintiff's consent to the terms of the settlement. (*Id.* at 5.) Defendant

3

also contends that two federal requirements—the agreement must be a complete agreement, and the parties have agreed to the terms of the settlement—have been met. (*Id.*)

### B. Plaintiff's Response

In his response in opposition, Plaintiff does not deny that he met with defense counsel on May 7, 2019, and signed the settlement agreement and release, nor does he deny that claims arising from the January 16, 2019, incident are covered by the release of claims. (*See* ECF No. 35.) However, he argues that defense attorney is deceiving the Court because Defendant only submitted the 2-page release, although multiple papers were on the table. (*Id.*) He complains that defense attorney took advantage of Plaintiff, as he is uneducated, slow in speech and learning, and did not understand what he was signing. (*Id.* at 2.) As in other cases concerning enforceability of the May 7, 2019, settlement agreement, Plaintiff alleges that before, during, and after the agreement, he was the target of two drive-by shootings, was retaliated against, and received death threats from officers. (*Id.*) Plaintiff alleges that defense attorney stalled until Plaintiff was forced to sign because of his extreme fear of retaliation and fear of being murdered or harmed. (*Id.* at 3.) Plaintiff requests that the Court deny the motion to dismiss and "allow [him] a fair opportunity/chance to settle this case at a settlement conference . . . ." (*Id.* at 3–4.)

## II.   LEGAL STANDARDS

### A. Settlement Agreement

A district court has the authority to "enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it." *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1995) (citations omitted); *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) (recognizing the Court's "inherent power to enforce [an] agreement in settlement of litigation before it"). Courts treat settlement agreements as contracts. *Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir. 2016). Even though the underlying cause of action in this case was based upon a federal statute, the settlement agreement is "treated as any other contract for purposes of interpretation." *United Com. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). Thus, the interpretation and enforcement of settlement agreements are governed by principles of state law, which apply to contracts generally. *Jeff D. v. Andrus*, 899

F.2d 753, 759 (9th Cir. 1990); *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014) ("[S]tate contract law governs whether [the parties] reached an enforceable agreement settling the federal and state law claims alleged in Plaintiffs' complaint.").

Under federal law, two requirements must be met for the Court to enforce a settlement agreement. First, the agreement must be complete. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Second, all parties must have directly agreed to be bound by the terms of the settlement. *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1144–45 (9th Cir. 1977).

In addition to these requirements, the Court applies California law in determining whether a legally enforceable settlement agreement was reached, even where the underlying cause of action arises under federal law. *See Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989); *United Com. Ins.*, 962 F.2d at 857. Under California law, contract formation requires (1) parties capable of contracting; (2) the parties' consent; (3) a lawful object; and (4) sufficient cause or consideration. *Lopez v. Charles Schwab & Co.*, 118 Cal. App. 4th 1224, 1230 (Cal. Ct. App. 2004) (citing Cal. Civ. Code § 1550). The clear and explicit meaning of the contract provisions, interpreted in their ordinary and popular sense, controls judicial interpretation. Cal. Civ. Code, §§ 1638, 1644; *U.S. Bank N.A. v. Yashouafar*, 232 Cal. App. 4th 639, 646 (2014).

**B.   Release of Claims**

The Court's consideration of the "conditions affecting the validity of a release of significant federal rights are eminently a matter of federal law . . . ." *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981). Federal common law, rather than state law, controls the effect and interpretation of a release of a section 1983 claim. *See Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987); *Jones*, 648 F.2d at 1203.

A release of claims for violations of civil and constitutional rights must be voluntary, deliberate, and informed. *Jones*, 648 F.2d at 1203. "There are both subjective and objective aspects to each of these elements." *Id.* Whether a release is voluntary, deliberate, and informed is determined on a case-by-case basis considering the totality of the circumstances surrounding the execution of the release. *See Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 462 (9th Cir. 1989). Further, under federal law, a valid release must be supported by consideration. *Salmeron*

*v. United States*, 724 F.2d 1357, 1362 (9th Cir. 1983).

The party seeking to enforce a release in a section 1983 action has the burden of proving its validity. *See Jones*, 648 F.2d at 1203–04. Public policy favors upholding voluntary agreements. *Bianchi v. Perry*, 140 F.3d 1294, 1297 (9th Cir. 1998) ("There is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into.") (internal citation omitted). "When fairly arrived at and properly entered into, settlement agreements and releases are generally viewed as binding, final, and as conclusive of the rights of the parties as is a judgment entered by a court." *Guiltron*, Case No. 1:18-cv-01364-DAD-GSA (PC), (ECF No. 38) (quoting *Hisel v. Upchurch*, 797 F. Supp. 1509, 1518 (D. Ariz. 1992), *adopted by* (ECF No. 40)).

### III. DISCUSSION

Defendant has presented the Court with competent evidence that the parties entered into a valid contract on May 7, 2019. The parties met all four requirements for a contract. California law broadly defines who may contract as "[a]ll persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights." Cal. Civ. Code § 1556. Plaintiff is not a minor, and there is no indication that he was of unsound mind or deprived of his civil rights. As to the second requirement, mutual assent between the parties is evident from the record; in particular, Plaintiff unequivocally expressed his desire to reach a settlement of all his claims. Notwithstanding Plaintiff's assertions that he was compelled to do so out of fear for his safety and well-being, Plaintiff voluntarily met with defense counsel and signed the release and stipulations of dismissal. The resolution of lawsuits is a lawful object of the settlement agreement, and Plaintiff accepted Defendant's $3,000 on May 7, 2019, which is sufficient consideration for a valid agreement.

Defendant has also met the two requirements under federal law for the Court to enforce the parties' settlement agreement. According to his declaration, defense counsel has established that the agreement is complete, and both parties agreed to be bound by the terms of the settlement. Although the release is less that a page and a half long, it is not missing any essential terms. Plaintiff's signature and acceptance of a $3,000 settlement check reflects his agreement to

release the County and its employees "from any and all claims, demands, actions or causes of action, known or unknown." (ECF No. 32 at 8.)  Since the alleged incident in this case occurred in January 2019, and the settlement was reached on May 7, 2019, Plaintiff was aware of any claims arising from January 2019 incident prior to signing the release.  Moreover, the release states: "[T]he undersigned has carefully read and understands the contents of this release and signs the same as his/her own free act.  THIS RELEASE SHOULD NOT BE SIGNED UNLESS READ AND UNDERSTOOD BY THE PERSONS SIGNING SAME." (*Id.* at 9.)  Plaintiff's signature contradicts his assertion that he did not understand the simple and straightforward language of the release.

The totality of the circumstances surrounding the execution of the release do not support Plaintiff's assertion that he entered into the settlement agreement involuntarily due to ongoing threats and fear for his life and safety.  In the case generating the settlement agreement, *Gradford v. Tiexiera*, 1:17-cv-00201-DAD-GSA (PC), Plaintiff specifically requested the inclusion of other cases to be discussed at the settlement conference that was already scheduled.  Instead of proceeding with the settlement conference where he could address his concerns with the Court, Plaintiff chose to negotiate directly with defense counsel by himself just days earlier.

In determining the enforceability of the release to a subsequently filed case, this Court is guided by the decision in one of Plaintiff's procedurally similar cases, *Freddie*, 1:19-cv-01252-DAD-EPG (PC).  In *Freddie*, like in this case, Plaintiff had filed his complaint on September 9, 2019, after he had signed the release on May 7, 2019.  However, Plaintiff raised claims based on alleged constitutional violations occurring in 2017.  In *Freddie*, the Court determined that the signed release form constituted a valid, clear, and unambiguous waiver of Plaintiff's legal claims known to him at the time of signing, including the claims raised in the later filed *Freddie* case. (*Id.* at ECF No. 68 at 3 (citing *Stanislaus Pub. Safety Ctr.*, No. 1:17-cv-01248-DAD-GSA (PC), (ECF No. 63).)

As in *Freddie*, Plaintiff filed this action after he signed the release, but the claims in this case arose from an alleged incident that occurred before he signed the release.  This action arises from an incident alleged to have occurred on January 16, 2019, and was pending at the time

1 Plaintiff signed the May 7, 2019 release.  The release encompasses any and all claims, known or
2 unknown. Therefore, this action is encompassed within the settlement, and by signing the
3 release, he waived his claims against Defendant Baez arising from the January 16, 2019,
4 incident.

5 The language of the release is clear and explicit that by signing, Plaintiff read and
6 understood the contents of the release and acknowledged that his signature was made as his own
7 free act.  (*See* ECF No. 32 at 9.)  The totality of the circumstances in this case indicates that
8 Plaintiff's settlement and release of claims was voluntary, deliberate, and informed.  The purpose
9 and effect of the release was to resolve all existing claims against the County and its employees,
10 ending their legal liability.  *In re City Equities Anaheim*, 22 F.3d at 957 ("Settlement agreements
11 are designed to, and usually do, end litigation, not create it.").  Plaintiff accepted a global
12 settlement amount of $3,000.  Plaintiff cannot now unilaterally decide to back out of the
13 settlement agreement and seek a settlement conference to re-negotiate the value of his claim in
14 this case. *See, e.g.*, *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1141 (9th Cir. 2002) ("[W]e cannot
15 countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing
16 the settlement when it suits her."); *Spitzer v. Aljoe*, 734 F. App'x 457,459 (9th Cir. 2018)
17 (affirming district court's denial of plaintiff's motion to rescind settlement reached between the
18 parties after mediation).

19 In other cases covered by the May 7, 2019, settlement, this Court has consistently held
20 that the release constitutes a clear and unambiguous waiver of his legal claims against the
21 County and its employees.  *See Florres*, 1:17-cv-01248-DAD-GSA (PC); *Guiltron*, 1:18-cv-
22 01364-DAD-GSA (PC); *Freddie*, 1:19-cv-01252-DAD-EPG (PC).  Upon a review of the release
23 in the context of this case, the Court finds that the release constitutes a clear and unambiguous
24 waiver of his claim against Defendant Baez.

25 Therefore, the Release of All Claims signed by Plaintiff on May 7, 2019, is valid and
26 should be enforced, Defendant's motion to dismiss this case should be granted, and this case
27 should be dismissed with prejudice.
28 ///

## IV. CONCLUSION

Based on the foregoing, the Court RECOMMENDS that:

1. Plaintiff's motion for an order enforcing the parties' settlement agreement and dismissing the case, (ECF No. 32), be GRANTED; and

2. This action be DISMISSED with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days of the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff's failure to file objections within the specified time may result in waiver of his rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 26, 2022**          /s/ Barbara A. McAuliffe
                                     UNITED STATES MAGISTRATE JUDGE